**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                :
RAMANAND PERSAUD,               :
                                :     Civil No. 06-4878 (RBK)
            Petitioner,         :
                                :
       v.                       :
                                :            OPINION
CHARLES SAMUELS, JR.,           :
WARDEN, Federal Correctional    :
Institution,                    :
                                :
            Respondent.         :
                                :
```

**APPEARANCES:**

    RAMANAND PERSAUD, Petitioner pro se
    #60765-053
    F.C.I. Fort Dix
    P.O. Box 2000 (EAST)
    Fort Dix, New Jersey 08640

    DOROTHY J. DONNELLY, ESQ.
    United States Attorney's Office
    402 East State Street, Suite 430
    Trenton, New Jersey 08608
    Counsel for Respondent

**KUGLER, District Judge**

This matter is before the Court on petitioner Ramanand Persaud's ("Persaud") application for habeas corpus relief under 28 U.S.C. § 2241, challenging prison disciplinary proceedings and the sanctions imposed upon him, which resulted in the his disciplinary segregation and loss of good conduct time. Persaud

seeks expungement of the disciplinary finding and imposed sanctions.

On January 12, 2007, the named respondent, Warden Samuels at FCI Fort Dix, filed an answer to the petition. Petitioner thereafter filed objections to the answer on or about January 25, 2007. The Court has reviewed all documents submitted and, for reasons now discussed, will deny the petition for lack of merit.

### BACKGROUND

At the time the alleged disciplinary infraction occurred, Persaud was confined at the Federal Correctional Institution in Schuylkill, Pennsylvania ("FCI Schuylkill").[1] On February 10, 2006, the housing area where Persaud and 27 other inmates were assigned was evacuated so that correctional officers could conduct a search of the premises. At about 9:00 a.m., Persaud was paged to the Administration Office at FCI Schuylkill, where he was confronted by Lt. Breckon and told that Correctional Officer ("CO") S. Chiglinsky found a cellular phone charger and unauthorized food products in Persaud's locker. Several hours later that same day, Lt. Breckon delivered Incident Report No.

---

[1] Persaud is a federal inmate who was sentenced on November 5, 2002 by the United States District Court for the Eastern District of New York to a 151 month prison term with a five year term of supervision for his convictions on federal offenses involving conspiracy, importation, possession and intent to distribute cocaine. His projected release date factoring good conduct time is August 26, 2013. (Respondent's Document 1, Declaration of Nicole Ahmed, Attachment A).

1432505 to petitioner, which charged Persaud with violating Code 199 (conduct which disrupts the security and orderly running of the institution) as to the cellular phone charger, and Code 305 (possession of anything not authorized) as to the unauthorized food products.  (Respondent's Document 3).

On February 15, 2006, Persaud appeared before the Unit Disciplinary Committee ("UDC").  The UDC referred the matter to a Disciplinary Hearing Officer ("DHO") because of the severity of the charges.

The DHO held a disciplinary hearing on February 27, 2006. Persaud had a staff representative, and was given the opportunity to call witnesses.  He chose to call his cell mate.  Persaud denied possessing the cell phone charger and requested a fingerprint analysis, which request was denied.  The DHO determined that Persaud had committed the prohibited acts based on the Incident Report, the photograph of the evidence and the October 28, 2005 memorandum from Warden Holt, which explained that possession of a cellular phone is considered a hazardous tool.  Persaud was sanctioned 75 days disciplinary segregation, 67 days loss of good conduct time and forfeiture of 175 days non-vested good conduct time.  He also lost telephone and visitation privileges for one year and commissary privileges for eight months.

Respondents concede that Persaud exhausted his administrative remedies before filing this habeas action.

## II.   CLAIMS PRESENTED

Persaud claims that he was denied procedural due process during his disciplinary proceedings.  Namely, he asserts the following:

1.   The DHO erred when considering the Warden's October 28, 2005 memorandum.

2.   The DHO erred when describing a cellular phone as a tool.

3.   Lt. Breckon violated Persaud's constitutional rights by not reading his rights or explaining the Incident Report to Persaud upon delivery.

4.   The Incident Report was invalid and delivered to Persaud without corrections.  No corrections were made before the statute of limitations expired for delivery.

5.   The preparing officer erred when preparing the Incident Report and no corrections were made before the statute of limitations expired for delivery.

Respondent contends that there was no deprivation of due process and that there was some evidence to support the discipline imposed.

III.  DISCUSSION

A.  Standard of Review

Persaud seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.  Applicable Regulations

The Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 et seq.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and

Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5.  Incident reports are prepared in accordance with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).  In this case, referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because one of the charges was designated as a "greatest" category offense and the UDC does not have the authority to disallow good conduct time.  Disallowance of good conduct time credits for high category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17.  These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the

6

inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d). The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions. 28 C.F.R. § 541.17(g). A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days. Id.

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974). See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

C.  Merits of Petitioner's Claims

1.  *There Was No Denial of Procedural Due Process*

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections. U.S. CONST. amend. XIV. In Wolff v. McDonnell, supra, the Supreme Court set forth the requirements of due process in prison disciplinary hearings. An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the

7

evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72). However, in Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

   Here, Persaud essentially argues that the Incident Report is invalid because the reporting officer did not sign it and deliver the Report to Persaud within the time period established by BOP Program Statement 5270.07.  He also asserts that he was not read his rights during the investigation, and that the charge does not fit the circumstances of the incident, *i.e.*, that a cellular phone is not a tool and therefore does not fall under Code 108 concerning possession of a hazardous tool.  This Court finds these claims to be meritless.

First, this Court notes that the procedures set forth in <u>Wolff</u> and <u>Von Kahl</u>, were followed in all respects. Persaud was provided with advance written notice of the charges against him, sufficient time to prepare a defense for an appearance at the disciplinary hearing, call witnesses and present evidence. He also received the assistance of a staff representative and was given a written statement by the DHO as to the evidence relied on and the reasons for the disciplinary. <u>See</u> <u>Wolff</u>, 418 U.S. at 563-71. <u>See</u> <u>also</u> Incident Report No. 1432505. Thus, the record does not support any claim that Persaud was denied due process.

Second, the Incident Report that was delivered to Persaud on February 10, 2006 clearly notified Persaud of the charges so as to give him an opportunity to respond. The Incident Report described the specific conduct in detail and provided the Code violations to inform Persaud of the charges against him:

> Date: 2/10/06, 9:15 am Staff became aware of incident) On the above date and approximate time, while conducting searches of cell EO3-013L housing inmate Persaud # 60765-03. I found the following contraband located in his locker: Smoked fish, Dunkin doughnuts coffee hazelnut blend 1 lb. in weight, and a cell phone charger.

Incident Report at ¶ 11.

> Conduct which disrupts the security and orderly running of the institution most like Code 108
> (possession of a hazardous tool)                         Code 199
>
> Possession of anything not authorized                    Code 305

Incident Report at ¶¶ 9, 10.

9

Thus, the Incident Report that was delivered to petitioner on February 10, 2006 was fully compliant with the requirements of due process as set forth in Wolff.  The fact that the report was not signed by the reporting officer at that time does not offend due process.  Wolff does not require a signed incident report to meet due process requirements, only that the incident report timely informs the inmate of the disciplinary charges against him so that he can prepare his defense.  Here, as noted above, the Incident Report duly informs Persaud of the charges and does so more than 24 hours in advance of the UDC hearing and DHO hearing.

Moreover, this Court finds no due process violation based on Persaud's allegation that a corrected Incident Report (*i.e.*, with the reporting officer's signature) was not delivered to him within three work days from the date of the incident.  The time limits set forth in BOP Program Statement 5270.07, referred to as "statute of limitations" by Persaud, "are subject to exceptions as provided in the rules."  BOP Program Statement 5270.07, Chapter 2, Page 3, Table 2, Note.  Persaud did receive actual notice of the charges on February 10, 2006 when the unsigned Incident Report was delivered to him, well within the 3-day time limit set forth in BOP Program Statement 5270.07, Chap. 2, Page 3, Table 2, No. 2.  The signature was eventually obtained and there are no allegations by Persaud that this signature error or any other alleged time limitation error impaired his ability to

10

present a defense and witnesses at his UDC hearing and DHO hearing.

Next, Persaud complains that he was not read his rights by Lt. Breckon when he delivered the Incident Report to Persaud. However, the administrative record reflects that Persaud received and signed an inmate's rights form on February 15, 2006, twelve days before his DHO hearing on February 27, 2006. This form fully advises and explains the inmate's rights with respect to disciplinary proceedings. Therefore, this claim by Persaud is plainly without merit.

Finally, Persaud asserts that the DHO erred when he considered the October 25, 2005 memorandum prohibiting cell phones and when he considered the cell phone charger as a tool. Consequently, Persaud contends that his conduct does not fall under a Code 108 violation concerning possession of a hazardous tool.[2]

As stated above, Persaud was charged with violating Code 199, conduct which disrupts or interferes with the security or orderly running of the institution most like Code 108 (possession of a hazardous tool). This charge related to the cell phone charger. Persaud admitted that he had received notice that

---

[2] This Court notes that Persaud does not take issue with the Code 305 violation and disciplinary finding regarding possession of anything not authorized, which referred to the unauthorized food products found in Persaud's locker and admitted by Persaud.

11

inmates possessing a cell phone would be charged with a Code 108 violation.  Specifically, this notice by the Warden (the October 25, 2005 memorandum) states that cell phones pose a security threat to the institution.

The administrative response to Persaud's arguments noted that a cell phone charger is an accessory or tool to a cell phone.  Its purpose is to charge a cell phone, otherwise the cell phone will not operate.  Persaud contends that the dictionary definition of a tool is "a hand-held implement, as a hammer, saw or drill, used in accomplishing work."  Thus, a cell phone charger cannot be a tool.  However, the word "tool" has more than one definition.  Respondent refers to dictionary.com, which defines a tool as "anything used as a means of accomplishing a task or purpose."  The Oxford English Dictionary has many definitions for tool, including, "any instrument of manual operation", and "anything used in the manner of a tool; a thing (concrete or abstract) with which some operation is performed; a means of effecting something; an instrument."

Thus, this Court finds no error in defining a cell phone charger as a tool, because it enables a cell phone to make calls.  Further, based on its function, a cell phone charger may logically be considered the same as a cell phone and could fall under a Code 108 violation accordingly, since its only purpose is to charge a cell phone for operation.

12

More importantly, however, Persaud was charged with a Code 199 violation, which is conduct that interferes with the security of the institution, and not with Code 108.[3]  Therefore, this Court finds that Persaud's possession of a component part of a cell phone, which is deemed a security threat that interferes with the security of the institution, also interferes with the security of the institution as charged under Code 199.  This charge of a Code 199 violation was clearly explained in the Incident Report and the conduct giving rise to the charge also was described in plain terms in the Incident Report.

Accordingly, this Court concludes that Persaud has not demonstrated any denial of due process.  Persaud was charged with a Code 199 violation, and he was fully informed as to the nature and severity of this charge from the Incident Report.  These claims will be denied for lack of merit.

2. *There Was Sufficient Evidence to Support the Charge*

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court has stated:

---

[3]  Both Code 199 and Code 108 are "greatest severity" charges, so the punishment for both is the same.

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Hill, 472 U.S. at 456 (internal citations omitted). Moreover, the Court stated: "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Id. at 457.

Here, there is sufficient evidence noted by the DHO in reaching his determination. The DHO's Report demonstrates that the DHO considered and relied upon the following evidence: the Incident Report, which described the conduct giving rise to the Code 199 violation, the photograph of the cell phone charger, and the October 25, 2005 memorandum from Warden Holt which explained to inmates that possession of a cell phone is considered a hazardous tool. Specifically, the DHO found:

> Persaud's involvement in the incident as noted in Section 11 of the Incident Report 1432505, as provided by S. Chiglinsky, Senior Officer, was viewed as inculpatory in this case. Paraphrased, Officer Chiglinsky writes: On 2/10/06, at 9:15 am, while conducting searches of cell EO3-013L housing inmate Persaud # 60765-03. I found the following contraband located in his locker: Smoked fish,

> Dunkin doughnuts coffee hazelnut blend 1 lb. in weight, and a cell phone charger.
>
> Inculpatory evidence in the form of a photograph taken by Lt. Breckon dated 2/10/06, corroborated the evidence cited in the incident report in this case.  The photograph clearly depicts the contraband as described in the report.
>
> Inculpatory evidence in the form of a memorandum from Warden Holt dated 10/28/05, corroborated the evidence cited in the incident report in this case.  Warden Holt indicated I have determined that inmate possession of a cellular telephone at this institution poses a serious impact on institution security.  Effective immediately, any inmate found in possession of a cellular telephone will be charged with a violation of code 108, Possession, Manufacture or Introduction of a Hazardous tool and will be sanctioned accordingly.  Also, please not that BOP Program Statement 5270.07 states it is an inmate's responsibility to keep his area free of contraband.  Therefore, you will be charged with a violation of code 108 if a cellular telephone is found in your personal area.
>
> The DHO believed the information provided by the staff members involved in this case, as they derived no benefit by providing false information.  The DHO finds Persaud is responsible for contraband found in his personal area (cubicle).  The Cell Phone Charger can only be used to charge a cell phone and was not altered to accommodate any other purpose.  Cellular telephones are a threat to the security and orderly running of the institution since it bypasses the telephone monitoring procedures established at the institution.  The DHO finds the charge of Conduct Which Disrupts - Most Like Possession of a Hazardous Tool best supports the finding for the cell phone charger.  The discovery of coffee from Dunkin Donuts and Smoked Fish supports the charge for Code 305 as a separate charge. These items can only be acquired through an outside source and smuggled into the institution.
>
> Upon questioning by the DHO, inmate Ramanand Persaud, Reg. No. 60765-053, neither admitted nor denied the charge(s). He elaborated his plea by stating, he takes responsibility for the coffee and fish but not the cell phone charger.

(DHO Report at Block V).  Thus, the DHO's Report plainly shows

that it was "not so devoid of evidence that the findings of the

[DHO were] without support or otherwise arbitrary." Hill, 472 U.S. at 457.

The DHO attached great weight to the fact that the cell phone charger was found in Persaud's personal area, namely, his locker. In addition, the DHO regarded the Warden's October 28, 2005 notice to inmates, which Persaud conceded he received, about the possession of a cellular phone being a serious interference with institutional security. It was not error for the DHO to consider the Warden's memo because it was relevant to Persaud's knowledge about the disciplinary code violation if in possession of a cell phone. Moreover, the DHO found that a cell phone charger serves no other purpose but to charge a cell phone. Consequently, there was more than sufficient evidence to support the DHO finding that possession of a device or tool like a cell phone charger, which serves only to charge a cell phone, is conduct that disrupts the security of the institution because it is most like possession of a hazardous tool.

Based upon this evidence as relied upon by the DHO, and without any contradictory evidence submitted by petitioner, except his self-serving denial of the prohibited act as charged and his argument that a cell phone charger is not a hazardous tool, this Court finds that Persaud's right to due process was not violated by the determination of the DHO. The procedures enunciated in Wolff, supra, were complied with, and there was "some evidence", in accordance with Hill, supra, to support the

16

DHO's finding of guilt.  See Sinde v. Gerlinski, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting Hill, 472 U.S. at 457).

Therefore, there is no basis to expunge the incident report and sanctions imposed because Persaud has not proven that he was denied due process or that there was insufficient evidence to support the disciplinary finding.  Accordingly, this habeas petition will be denied for lack of merit.

## CONCLUSION

Based upon the foregoing, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 will be denied for lack of merit. An appropriate Order accompanies this Opinion.

                                    s/Robert B. Kugler
                                    ROBERT B. KUGLER
                                    United States District Judge

Dated: July 3, 2007